**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 16-cv-00275-REB-KLM

W.L. GORE & ASSOCS., INC.,

    Plaintiff,

v.

TOPOGRAPHIC SPORTS, INC. d/b/a Spira, and
NADIA NAHMAD,

    Defendants.

**ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER**

**THIS MATTER** comes before the undersigned[1] pursuant to the Plaintiff's ("Gore") *ex parte* Motion for Temporary Restraining Order **(# 7)** and other associated relief.

Gore is a manufacturer of outerwear products, particularly products featuring certain proprietary materials and techniques. It is also the owner of several registered trademarks, including logos incorporating the words GORE, WIND STOPPER, and SITKA, and a mark composed of an abstract graphic element. Gore alleges that, beginning in or about October 2015, the Defendants have been operating a store at the Cherry Creek Mall in Denver, Colorado, under the trade name "Spira." Spira prominently displays what Gore alleges are counterfeit versions of Gore's products, each accompanied by one or more unauthorized uses of Gore's various marks.

Gore has produced the affidavits of Anthony Gerardo and Margaret Zylstra, individuals who went to the Spira store, took various photographs showing displays that feature Gore's

---

[1] Given the expedited nature of Gore's request and Judge Blackburn's temporary unavailability, the undersigned is addressing the instant motion at Judge Blackburn's request.

marks, and purchased products bearing Gore's marks.  Mr. Gerardo and Ms. Zylstra then delivered those products to Thomas Gray and Bill Foster, representatives of Gore.  Mr. Gray and Mr. Foster examined the products and confirmed that although Spira's products prominently display Gore's marks, the products are not manufactured by Gore or do not use Gore's materials or manufacturing techniques.[2]  Both Mr. Gray and Mr. Foster also confirm that neither of the Defendants are authorized by Gore to act as retailers or distributors of its products or to make use of its marks.

Based on these allegations, Gore's Complaint **(# 1)** asserts five causes of action: (i) trademark counterfeiting, in violation of 15 U..C. § 1114(1)(b); (ii) trademark infringement, in violation of 15 U.S.C. § 1114(1)(a); (iii) unfair competition, in violation of 15 U.S.C. § 1125(a); (iv) trademark dilution, in violation of 15 U.S.C. § 1125(c); and (v) common-law trademark infringement, under an unspecified jurisdiction's common law.

Presently before the Court is Gore's Expedited *Ex Parte* Motion for Temporary Restraining Order, [etc.] **(# 7)**.  Gore requests that the Court: (i) grant it a temporary restraining order of unspecified contents[3]; (ii) grant it authority to engage in an *ex parte* seizure of the alleged counterfeit goods pursuant to 15 U.S.C. § 1116(d)(1)(A); and (iii) grant it certain expedited discovery.

---

[2]  The products examined by Mr. Foster apparently used Gore's materials and techniques, but were not compliant with Gore's quality standards, leading Mr. Foster to conclude that the products were not "genuine Gore products."  The products examined by Mr. Gray did not use Gore's materials or techniques

[3]  Gore's proposed order indicates that the temporary restraining order would prohibit the Defendants and those acting in concert with them from using any counterfeit of the Gore marks in commerce and enjoin them from altering any products in their possession that currently bear counterfeit marks (such as by removing those marks).

2

### A. Temporary restraining order

Gore's request for a temporary restraining order, prohibiting the Defendants from continuing to infringe on Gore's marks and requiring them to preserve any evidence of existing trademark infringement, is governed by Fed. R. Civ. P. 65(b)(1). To obtain *ex parte* relief under this Rule, Gore must: (i) demonstrate, by affidavit, that it will suffer immediate and irreparable injury before the Defendants can be heard in opposition; and (ii) provide a certification from Gore's counsel identifying any efforts that Gore has made to give notice to the Defendants and the reason why such notice should not be required. Fed. R. Civ. P. 65(b)(1)(A), (B). In addition, courts often require parties requesting temporary restraining orders to make a sufficient showing of the same factors that the court will ultimately consider in subsequent preliminary injunction proceedings: (i) the plaintiff's likelihood of success on the merits; (ii) that the plaintiff will suffer irreparable harm if the injunction is not granted; (iii) a showing that the balance of equities favors the plaintiff; and (iv) that the requested injunction is not adverse to the public interest. *See Taxsalelists.com, LLC v. Rainer*, 2009 WL 4884273 (D.Colo. Dec. 11, 2009 ) (unpublished).

Here, Gore has adequately demonstrated that the Defendants' sales of counterfeit (and inferior) Gore products with counterfeit Gore marks poses an ongoing harm to Gore's goodwill. *See e.g. Steak n Shake Enterprises, Inc.. v. Globex Company, LLC*, 110 F.Supp.3d 1057, 1078 (D.Colo. 2015). Because the Defendants are operating an ongoing retail business, this harm will continue to accrue to Gore during any period in which the Court pauses to await responsive filings from the Defendants. Moreover, as Gore's counsel points out, the Spira store being operated by the Defendants is subject to only a temporary lease of the retail space, and Gore has alleged that Spira's fixtures and other equipment are temporary in nature, suggesting that the Defendants could quickly abandon the enterprise and remove the offending merchandise upon

notification of the pendency of this action. Under these circumstances, the Court is satisfied that Gore has satisfied the requirements of Rule 65(a)(1)(A) and (B).

The Court also finds that Gore has made a facial showing of its entitlement to *ex parte* relief under the traditional preliminary injunction factors. For the reasons set forth above, the Court finds that Gore has made a facial showing that it is suffering continuous, irreparable harm from the Defendants' actions. Gore has adequately shown that the marks used without authorization by the Defendants are seemingly identical to Gore's own marks, suggesting a high probability of Gore's success on its claims. Assuming Gore's allegations to be true, the balance of equities would tip in favor of Gore, as Gore has strong rights in its registered marks and the Defendants have little right to infringe upon those marks to sell inferior-quality goods. Any harm to the public interest that would result from an injunction that curtails Spira's ability to sell merchandise is readily-outweighed by the public's interest in curtailing the use of counterfeit trademarks and avoiding customer confusion or deception. Accordingly, the Court grants Gore's request for an *ex parte* temporary restraining order prohibiting the Defendants from further infringement of Gore's marks and requiring the Defendants to preserve any existing evidence of their use of Gore's marks.

### B. Seizure order

Turning next to Gore's request for an *ex parte* order permitting it to seize the Defendants' existing stock of infringing products, the Lanham Act, 15 U.S.C. § 1116(d)(1), authorizes the Court to grant such relief upon numerous findings: (i) that Gore has adequately alleged the use of a counterfeit mark, 15 U.S.C. § 1116(d)(1)(A); (ii) that Gore has given advance notice of its request to the United States Attorney, 15 U.S.C. § 1116(d)(2); (iii) that Gore has made a sufficient factual showing of the relevant facts by affidavit, 15 U.S.C. § 1116(d)(3)(A); (iv) that

Gore provide sufficient security to protect the Defendants against a wrongful seizure, 15 U.S.C. § 1116(d)(4)(A); (iv) that Gore show that any order other than an *ex parte* seizure order is inadequate to achieve the purposes of protecting its marks, 15 U.S.C. § 1116(d)(4)(B)(i); (v) that Gore has not publicized the requested seizure, 15 U.S.C. § 1116(d)(4)(B)(ii); (vi) that Gore can establish a likelihood of success, that it will suffer irreparable injury absent a seizure, and that the equities favor it over the Defendants, 15 U.S.C. § 1116(d)(4)(B)(iii), (iv), (vi); (vii) that the material to be seized is likely to be located at the place identified in the application, 15 U.S.C. § 1116(d)(4)(B)(v); and (viii) that the Defendants would be likely to destroy or move the infringing material if the Court were to require notice prior to any seizure, 15 U.S.C. § 1116(d)(4)(B)(vii).

The Court finds that, with some minor modifications, Gore has made all of the necessary showings. In addition to the findings made above, the Court notes that on February 4, 2016, Gore's counsel advised the United States Attorney of its request for a seizure of the Defendants' merchandise. To date, the United States Attorney has not appeared in this matter or requested that the Court refrain from authorizing seizure pending a potential criminal prosecution. The Court is satisfied that the delay of two business days or four calendar days between Gore's notice and the instant Order has provided the United States Attorney sufficient time to seek to intervene if it so desired.

Gore has proposed posting a $10,000 bond to secure the Defendants against any harm arising from an unlawful seizure. As best the Court can determine, nothing in the record indicates how Gore selected this sum, nor does Gore attempt to estimate the value of Spira's stock on hand or otherwise quantify the potential for damage to Spira from an unwarranted seizure. The Court finds that a somewhat higher bond is warranted. Mr. Gerardo's affidavit

reveals that the products sold by the Defendants are fairly expensive: Mr. Gerardo's eight products cost him nearly $ 1,5000, for an average price of nearly $190 per item. Ms. Zylestra's single purchase of a $ 149 item is consistent with such a finding. Mr. Gerardo's photographs of the Spira store suggest that it holds a considerable inventory. Assuming an average price of $175 per item, Gore's proposed bond is enough to secure the retail price of only 57 items, far less than are evident in Mr. Gerardo's photos. Although Gore may be correct that there is a fairly low likelihood that any seizure of Spira's merchandise will subsequently be found to be wrongful, the Court is also cognizant that the incremental cost to Gore of posting a higher-value bond is also low. Accordingly, the Court will require that Gore post a bond in the amount of no less than $ 25,000 to secure the Defendants against the risk of unwarranted seizure.

The Court further finds that Gore has not previously publicized its request for a seizure and has shown good cause to believe that the material to be seized may be found at Spira's Cherry Creek Mall location.

Accordingly, the Court grants Gore's request for an order of seizure pursuant to 15 U.S.C. § 1116(d). Although Gore's proposed order provides that the seized material shall be retained by Gore's counsel, 15 U.S.C. § 1116(d)(7) requires that the material be "taken into the custody of the court." Accordingly, within 72 hours of effectuating the seizure, Gore's counsel shall contact the Clerk of the Court to make appropriate arrangements to transfer the seized material into the custody of the Court or to make whatever alternative arrangements the Clerk of the Court may permit.[4]

---

[4] The Clerk of the Court is authorized, at his discretion, to permit Gore's counsel to retain possession of the materials as custodian, upon such terms and safeguards as the Clerk may deem appropriate.

**C. Expedited discovery**

Finally, Gore requests that the Court approve certain forms of expedited discovery. Gore has not made a showing that such a request must be considered on an *ex parte* basis, and thus, the Court declines to address that request at this time. Gore may renew that request at an appropriate time later in this action.

Accordingly, the Court **GRANTS IN PART** Gore's Motion for a Temporary Restraining Order **(# 7)** as follows:

1. Pending a preliminary injunction hearing, the Defendants, and those acting in concert with them, are hereby enjoined from importing, manufacturing, offering for sale, advertising, or otherwise distributing any good or service in connection with any of the registered trademarks owned by Gore;

2. Pending a preliminary injunction hearing, the Defendants, and those acting in concert with them, are hereby enjoined from altering or removing any products in their possession or control that bear actual or counterfeit versions of Gore's registered trademarks, including removing such marks that are current attached to such products.

3. As soon as is practicable, between the dates of February 8, 2016 and February 13, 2016, the United States Marshals Service is authorized to enter the premises of Spira in the Cherry Creek Mall, 3000 E. First Avenue, Denver, Colorado, and seize the following items:

> • Any and all goods or papers bearing one or more versions of the marks shown on pages 5 or 6 of the Complaint in this action;
>
> • Any and all records – paper, electronic, or otherwise – that document the manufacture, importing, sale, or promotion of such goods; and
>
> • Any computers, servers, or electronic recording media that contain such electronic records.

The Marshals shall have the authority to use reasonable force to open doors and locks and to enter such premises and storage areas as may be likely to contain the materials described above, and to take such photographs and other recordings of its activities during the seizure as may be appropriate. The Marshal shall prepare a report of its activities and an inventory of items seized, providing a copy to the parties to this action; Gore shall file a copy of that inventory with the Court as soon as practicable following the seizure. At the Marshals' discretion, one or more representatives of Gore may be permitted to assist in the entry into the premises and the review and assist in the identification of the items to be seized. The Marshal shall initially retain custody of the seized property; within 72 hours of the seizure, Gore shall make arrangements with the Clerk of the Court to make further arrangements for the Court to take custody of the seized material as set forth above.

Within 48 hours of this Order, Gore shall post a *supersedeas* bond with the Court in the amount of $ 25,000, or shall deposit that amount in cash with the Court, to secure the Defendants against any loss or injury resulting from any wrongful seizure. Gore shall indemnify the United States Marshal for any damage or loss caused by the execution of the seizure order.

Gore shall serve a copy of the Summons, Complaint, the instant motion (with exhibits), and this Order upon the Defendants contemporaneously with the execution of the seizure order, or as soon as is practicable thereafter. This Order shall remain in effect pending an evidentiary hearing on Gore's request to convert the existing temporary restraining order into a preliminary injunction. That hearing will occur before Judge Blackburn on **February 22, 2016** at **10:00 a.m**. A maximum of two hours is allotted for this hearing. The Defendants shall file any response to

Gore's request for a preliminary injunction on or before **February 17, 2016;** Gore may file a reply brief at or before **noon** on **February 19, 2016**.

Dated this 8th day of February, 2016 at 2:30 p.m.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge